IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK PENNINGTON<br>607 West Brown Street<br>New Lexington, Ohio 43764 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| I BORE, LLC<br>2160 Hardy Parkway Street<br>Grove City, Ohio 43123-1240 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>Kacie D. Waugh, Statutory Agent<br>3083 Columbus Street<br>Grove City, Ohio 43123 | )<br>)<br>)<br>)<br>) | |
| CHARLES LANG, JR.<br>c/o I Bore LLC<br>2160 Hardy Parkway Street<br>Grove City, Ohio 43123-1240 | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Mark Pennington, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Pennington is a resident of the city of New Lexington, Perry County, state of Ohio.

2. I Bore, LLC is a domestic corporation with its principal place of business located in Franklin County at 2160 Hardy Parkway Street, Grove City, Ohio 43123.

3. Charles Lang, Jr. is a resident of the state of Ohio.

4. Lang was at all times hereinafter mentioned, an individual who was president and/or owner of I Bore.

5. Lang was at all times hereinafter mentioned an employer within the meaning of Ohio Revised Code § 4112.02.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Pennington is alleging a Federal Law Claim under The Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq*.

7. All material events alleged in this Complaint occurred in the County of Franklin.

8. This Court has supplemental jurisdiction over Pennington's state law claims pursuant to 28 U.S.C. § 1367 as Pennington's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Pennington has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

11. Pennington has federal disability claim pending in the EEOC and once he receives the Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), he will amend his Complaint.

## FACTS

12. Pennington is a former employee of I Bore.

13. Pennington is 55 years old.

14. I Bore hired Pennington in or around September 2015.

15. I Bore hired Pennington as a Foreman.

16. At all times material herein Charles Lang, Jr. was an owner and/or supervisor for I Bore.

17. At all times material herein Lang had the authority to hire and fire employees of I Bore.

2

18. In or around 2016, Pennington suffered an injury on the job ("2015 Injury").

19. As a result of the 2016 Injury, Pennington was diagnosed with broken bones and a collapsed lung.

20. As a result of being diagnosed with a collapsed lung, Pennington has continued to experience ongoing health problems with circulation and respiration ("Disability").

21. Pennington's Disability substantially impairs one or more of his major life activities, such as working.

22. As a result of suffering from his Disability, Pennington is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

23. In the alternative, I Bore perceived Pennington as being disabled.

24. In the alternative, I Bore perceived that Pennington's Disability constituted a physical impairment.

25. In the alternative, I Bore perceived Pennington's Disability to substantially impair one or more of his major life activities, including working.

26. Despite this actual or perceived disabling condition, Pennington was still able to perform the essential functions of his job with or without reasonable accommodation(s).

27. Lang knew that Pennington suffered from a collapsed lung in or around 2016.

28. Lang knew that Pennington continued to have ongoing health problems with circulation and respiration due to the collapsed lung.

29. After learning about Pennington's Disability, Lang told Pennington that the company would pay for Pennington's medical bills if Pennington agreed not to file a claim for Worker's Compensation.

30. After learning about Pennington's Disability, Lang told Pennington that he would never get a raise because I Bore had to pay for Pennington's medical bills.

31. After Lang learned how large Pennington's medical bills were, he refused to pay unless Pennington negotiated a reduction.

32. After learning about Pennington's Disability, Defendants began to treat Pennington poorly in comparison to other non-disabled employees.

33. After learning about Pennington's Disability, Defendants began to treat Pennington in a disparate manner in comparison to other non-disabled employees.

34. At all times, material herein, Defendants employed at least 50 employees at the location where Pennington worked.

35. At all times material herein, I Bore had employed Pennington for at least 12 months.

36. In the 12 months prior to April 1, 2019, Pennington worked at least 1,250 hours for I Bore.

37. At all times material herein, I Bore is an employer covered under the Family Medical Leave Act.

38. While employed by I Bore, Pennington was eligible for FMLA leave.

39. In or around April 2019, Pennington informed Defendants that he needed to take time off to have surgery ("April 2019 Surgery Disclosure").

40. Following the April 2019 Surgery Disclosure, Defendants failed to inform Pennington that he was eligible to take FMLA leave.

41. After Pennington had surgery in April 2019, he returned to work at I Bore.

42. In or around December 2019, Pennington informed Defendants that he needed to take time off work to have a second surgery ("December Surgery Disclosure").

43. In making the December Surgery Disclosure, Pennington shared with Defendants that he suffered from a blockage in his coronary and/or an aneurysm in his aorta.

44. Following the December 2019 Surgery Disclosure, Defendants failed to inform Pennington that he was eligible to take FMLA leave.

45. Pennington had surgery in December 2019 and was off work until February 2020 ("Pennington Second Surgery Leave").

46. In or around February 2020, Pennington returned to work at I Bore.

47. During the Pennington Second Surgery Leave, Defendants gave I Bore employees pay raises.

48. During the Pennington Second Surgery Leave, Defendants gave I Bore employees a bonus.

49. Pennington did not receive a pay raise or bonus during the Pennington Second Surgery Leave.

50. Employees who were significantly younger than Pennington received a pay raise and/or bonus during the Pennington Second Surgery Leave.

51. Non-disabled employees received a pay raise and/or bonus during the Pennington Second Surgery Leave.

52. When Pennington returned to work from the Pennington Second Surgery Leave, he had visible changes to his appearance, namely, a tube had been inserted under Pennington's skin on his chest that ran from his heart into his leg ("Pennington Tube").

53. When Pennington's coworkers saw the bulge in his skin caused by the Pennington Tube, they began to treat him differently.

54. When Pennington's coworkers saw the bulge in his skin caused by the Pennington Tube, they began to ask him offensive questions.

55. When Pennington's coworker who was in charge of safety on projects saw the bulge in Pennington's skin caused by the Pennington Tube, he asked Pennington, "how are you allowed to work with that coming out of your side?"

56. Pennington's only restriction after returning to work with the Pennington Tube was to avoid horseplay or physical interactions that might dislodge the Pennington Tube.

57. After learning about the Pennington Tube, Defendants treated Pennington poorly.

58. After learning about the Pennington Tube, Defendants demoted Pennington from the position of foreman to laborer.

59. The decision to demote Pennington from foreman to laborer was an adverse employment action.

60. The decision to demote Pennington from foreman to laborer was an adverse action.

61. The decision to demote Pennington from foreman to laborer was an adverse employment action based on Pennington's age.

62. The decision to demote Pennington from foreman to laborer was an adverse action based on Pennington's age.

63. The decision to demote Pennington from foreman to laborer was an adverse employment action based on Pennington's medical conditions.

64. The decision to demote Pennington from foreman to laborer was an adverse action based on Pennington's medical conditions.

65. After learning about the Pennington Tube, Defendants permitted Pennington's coworkers to harass Pennington about his medical conditions.

66. In or around March 2020, Pennington's coworker and fellow foreman asked Pennington about whether Pennington received a bonus and raise.

67. In or around March 2020, Pennington learned that all other I Bore employees had received pay raises and/or bonuses, except him.

68. After learning that all other I Bore employees had received pay raises and/or bonuses, except him, Pennington made a post on his private Facebook page expressing his sadness that people he thought were his friends were not actually his friends and/or his belief that money changes people ("Pennington Private Post").

69. The Pennington Private Post did not mention Defendants.

70. The Pennington Private Post did not mention his rate of pay or the rate of pay of other employees.

71. On or about March 6, 2020, Defendants terminated Pennington for the Pennington Private Post ("Stated Basis for Termination").

72. Lang made and/or participated in the decision to terminate Pennington.

73. Defendants' Stated Basis for Termination has no basis in fact.

74. Defendants' Stated Basis for Termination did not actually motivate Defendants' decision to terminate Pennington.

75. Defendants' Stated Basis for Termination was insufficient to motivate the termination of Pennington.

76. Defendants' Stated Basis for Termination was pretext to terminate Pennington.

77. Pennington was actually terminated in an effort to avoid providing Pennington with any leave under the FMLA.

78. Pennington was actually terminated due to his Disability.

79. Pennington was actually terminated due to the Pennington Tube.

80. Pennington was actually terminated due to his age.

7

81. Defendants replaced Pennington with an employee who was over twenty years younger than Pennington.

82. Defendants replaced Pennington with Jordan Castle.

83. Castle is twenty-four years old.

84. Castle is not disabled.

85. Castle did not request medical leave.

86. Defendants replaced Pennington with an employee who is not disabled.

87. The above facts demonstrate that Defendant engaged in a pattern and practice of disability discrimination.

88. The above facts demonstrate that Defendant engaged in a pattern and practice of avoiding obligations under the FMLA.

89. The above facts demonstrate that Defendant engaged in a pattern and practice of age discrimination.

90. As a result of being wrongfully terminated from Defendant, Pennington has suffered and will continue to suffer damages.

91. As a direct and proximate result of Defendants' conduct, Pennington suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

92. Pennington suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

## **COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS**

93. Pennington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

94. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

95. I Bore is a covered employer under FMLA.

96. During his employment, Pennington qualified for FMLA leave.

97. On or about March 6, 2020, Defendants terminated Pennington's employment in order to prevent him from using qualified FMLA leave.

98. Defendants unlawfully interfered with Pennington's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

99. Defendants violated sections 825.300(b-c) of the FMLA and interfered with Pennington's FMLA rights when Defendant did not properly advise Pennington about his eligibility for FMLA leave.

100. As a direct and proximate result of Defendants' conduct, Pennington is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112.01 *et seq*.

101. Pennington restates each and every prior paragraph of this Complaint as if it were fully restated herein.

102. Pennington suffers from ongoing complications of a collapsed lung.

103. Pennington suffers from heart disease necessitating a coronary bypass.

104. Pennington suffers from an aneurysm in his aorta.

105. Pennington is disabled.

106. In the alternative, I Bore perceived Pennington as being disabled.

107. Pennington's conditions constitute a physical impairment.

108. Pennington's conditions substantially impair one or more of his major life activities, including working.

109. I Bore perceived Pennington's conditions to substantially impair one or more of his major life activities, including working.

110. I Bore treated Pennington differently than other similarly-situated employees based on his disabling conditions.

111. I Bore treated Pennington differently than other similarly-situated employees based on his perceived disabling conditions.

112. On or about March 6, 2020, Defendants terminated Pennington's employment without just cause.

113. Defendants terminated Pennington's employment based on his disability.

114. Defendants terminated Pennington's employment based on his perceived disability.

115. Defendants violated R.C. § 4112.01 *et seq.* by discharging Pennington based on his disability.

116. Defendants violated R.C. § 4112.01 *et seq.* by discharging Pennington based on his perceived disability.

117. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Pennington based on his disabling conditions.

118. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Pennington based on his perceived disabling conditions.

119. Defendants violated R.C. § 4112.01 *et seq.* by using an employee's status as disabled or non-disabled when setting rates of pay.

120. Defendants violated R.C. § 4112.01 *et seq.* by using an employee's status as disabled or non-disabled when deciding which employees are entitled to a bonus.

121. Defendants violated R.C. § 4112.01 *et seq.* by demoting Pennington from foreman to laborer based on his disabling conditions.

122. Defendants violated R.C. § 4112.01 *et seq.* by demoting Pennington from foreman to laborer based on his perceived disabling conditions.

123. Defendants violated R.C. § 4112.01 *et seq.* by applying their employment policies in a disparate manner based on an employee's status as disabled or non-disabled.

124. Defendants violated R.C. § 4112.01 *et seq.* by applying their disciplinary policies in a disparate manner based on an employee's status as disabled or non-disabled.

125. Pennington suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

126. As a direct and proximate result of Defendant's conduct, Pennington suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **COUNT I: AGE DISCRIMINATION IN VIOLATION OF 29 U.S.C. § 621** *et seq*.

**(Against All Defendants)**

127. Pennington restates each and every prior paragraph of this complaint, as if it were fully restated herein.

128. Pennington was 54 years old at the time of his termination.

129. At all times relevant, Pennington was a member of a statutorily-protected class under 29 U.S.C. § 621 *et seq*.

130. Defendants treated Pennington differently from other similarly situated employees based on his age.

131. Pennington was fully qualified for his position and employment with the Defendants.

132. After terminating Pennington, the Defendants replaced Pennington with a person who was significantly younger and/or not belonging to the protected class under 29 U.S.C. § 621 *et seq*.

133. The Defendants violated 29 U.S.C. § 621 *et seq*. by discriminating against Pennington based on his age.

134. Pennington suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 29 U.S.C. § 621 *et seq*.

135. As a direct and proximate result of the Defendants' conduct, Pennington suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Pennington demands from Defendants the following:

(a) Issue an order requiring I Bore to restore Pennington to one of the positions to which she was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Pennington for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Pennington's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

                                        Respectfully submitted,

                                        */s/ Trisha M. Breedlove*
                                        Trisha Breedlove (0095852)
                                        Paul Filippelli (0097085)
                                        **THE SPITZ LAW FIRM, LLC**
                                        1103 Schrock Road, Suite 307
                                        Columbus, Ohio 43229
                                        Phone: (216) 291-4744
                                        Fax:    (216) 291-5744
                                        Email: trisha.breedlove@spitzlawfirm.com
                                                           paul.filippelli@spitzlawfirm.com

                                        *Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Mark Pennington demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha M. Breedlove*
Trisha Breedlove (0095852)
